498 A.2d 639

**Martin FAGAN et ux.**

v.

**HOWARD COUNTY, Maryland et al.**

**No. 9, Sept. Term, 1985.**

Court of Appeals of Maryland.

Oct. 9, 1985.

Lawrence S. Greenwald, Baltimore (Jerrold A. Thrope and Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, on brief), for appellant.

W. Gar Richlin, Baltimore (Roger D. Redden and David M. Funk, Baltimore, on brief), for Columbia Park & Recreation Ass'n, Inc., part of appellee.

David E. Beller, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for State Dept. of Assessments and Taxation, other appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

In *Reyes v. Prince George's County*, 281 Md. 279, 301, 380 A.2d 12, 24 (1977), we "delineated the circumstances under which the adjudication of collusive suits arising [t]hereafter may be appropriate...." This case presents circumstances under which the termination of a collusive suit without adjudication is appropriate.

The Columbia Park and Recreation Association, Inc. (CPRA) is a Maryland, nonprofit, membership corporation. CPRA operates community and recreational facilities, provides community programs and services, and maintains parkland and open space in Columbia, Howard County. Columbia is a planned community which is not a municipal corporation. A major source of revenue for CPRA is a charge assessed annually (the Annual Charge) against all property which is subject to a certain Deed, Agreement, and Declaration of Covenants, Easements, Charges and Liens, dated December 13, 1966 (the Declaration). The Annual Charge under the Declaration may not exceed $.75 per $100 of "Assessed Valuation." As defined in the Declaration, "Assessed Valuation" is related to the valuation of real estate in each year for purposes of Howard County and State of Maryland ordinary taxes. Chapter 175 of the Acts of 1978 and Ch. 314 of the Acts of 1979 made modifications for tax purposes in the ratio of real estate assessments to market value. Both acts, however, contained sections (the Savings Provisions) on which CPRA relies for its legal position that the Annual Charge may continue to be calcu-

lated on the same ratio of assessment to market value as prevailed for tax purposes prior to the 1978 and 1979 enactments.

In order to obtain a judicial determination of the validity of the Savings Provisions, CPRA caused a test suit, prior to the suit *sub judice,* to be brought against it by the owners of a property subject to the Declaration. The Circuit Court for Howard County in that case adjudicated the Savings Provisions to be unconstitutional. This Court granted certiorari following CPRA's appeal, and we held that the circuit court should have dismissed the action. Under the rules relating to collusive actions as laid down in *Reyes,* CPRA's suit did not have " '*as a proper party a governmental body, or an agency or official thereof....* ' " *Columbia Park & Recreation Association, Inc. v. Olander,* 287 Md. 1, 8, 410 A.2d 592, 596 (1980) (emphasis in original).

Thereafter the County Council of Howard County enacted Bill No. 75 authorizing the issuance of industrial development revenue bonds, the proceeds of which were to be used for certain CPRA projects. The revenue source for these bonds was, in essence, money derived from Annual Charges under the Declaration.

CPRA then caused the instant test suit to be instituted in accordance with the procedures set forth in *Reyes.* By letter to the administrative judge of the Circuit Court for Howard County, CPRA explained that it sought an adjudication of the Savings Provisions and that Martin H. and Barbara Fagan, owners of property subject to the Declaration, had agreed to serve as plaintiffs. The circuit court entered an order appointing as counsel for the position adverse to that of CPRA the same attorney who had represented that adverse position in the aborted *Olander* litigation. The court further ordered that counsel's "fee for his services and the costs incurred in his representation of the [Fagans are] to be paid by [CPRA] as approved and directed by this Court." In the suit filed by appointed counsel CPRA, Howard County, the Attorney General of

Maryland, and Gene Burner, the Director of the State Department of Assessments and Taxation, were joined as defendants. By June 22, 1982, all defendants had answered the suit.

There were no further proceedings of consequence until March 2, 1984, when Howard County moved to dismiss as to it. The motion recited that the county had been advised by its bond counsel that, due to amendments to the Internal Revenue Code, interest on the bonds authorized by Bill No. 75 would not be exempt from federal income taxation. The motion represented that the financing for the CPRA projects had changed and that revenue bonds would not be issued by Howard County. CPRA then moved to dismiss. It argued that, absent Howard County as a party, the case was controlled by *Olander*. Appointed counsel argued that the Attorney General and the Director of the Department of Assessments and Taxation satisfied the *Reyes-Olander* imposed need for a governmental party. The state officials argued that their joinder did not satisfy that requirement where the legal issue involved the Annual Charge.

Prior to the hearing on these motions, the County Council of Howard County had repealed Bill No. 75 so that appointed counsel dismissed Howard County as a defendant. The circuit court then dismissed the entire case on the ground that a proper governmental party within the meaning of *Reyes* no longer remained in the case.

Appointed counsel noted an appeal, and we granted certiorari prior to the determination of the case by the Court of Special Appeals. The appellate briefs have addressed whether the joinder as a defendant of either of the state officials preserved justiciability. We need not address the issues briefed by the parties because oral argument before us revealed that counsel have been operating under a misconception as to the reach of *Reyes*.

In its motion to dismiss CPRA advised the circuit court in part as follows:

Without the County's continued participation in this case, CPRA no longer wishes to proceed with this suit as test litigation because there is a significant risk that CPRA will be required to expend substantial sums on legal expenses and not obtain a judicial determination of the legal questions raised in the Petition.

At oral argument in this Court counsel for CPRA advised that the need for a test case had arisen because counsel had been unable to give an unqualified opinion in connection with the proposed bond issue. We were further advised that CPRA no longer desired to obtain a judicial determination because it had solved the problem of financing the contemplated projects by another means which does not depend on the validity of the Savings Provisions. Yet, the instant case has, in effect, taken on a life of its own. It appears that counsel appointed to advocate the position adverse to CPRA is of the view that his duty, under *Reyes*, requires him to continue to press on, even through appeal, at the expense of CPRA because the named plaintiffs have standing. That is to say, were the Savings Provisions adjudged unconstitutional, the Fagans would enjoy a reduction in the Annual Charge assessed against their property. Counsel for CPRA at the same time seems to have operated under the impression that *Reyes* prohibited CPRA from discontinuing paying counsel fees and expenses of appointed counsel even though CPRA no longer wanted an adjudication. If counsel for both interests ever presented this problem to the circuit court, it does not appear in the record, other than the statement from the CPRA motion quoted above. Instead, the parties argued whether or not *Reyes'* prerequisites to a collusive suit continued to be met.

■ Nothing in *Reyes* requires the party financing a test case to continue to finance it once that party has concluded that it is no longer interested in obtaining a judicial determination of the issue. When CPRA concluded that it was no longer willing to finance litigation against itself, all counsel should have laid the realities before the circuit court and

obtained an order (1) terminating the appointment of counsel for the position adverse to CPRA, (2) terminating the provision in the prior order for payment by CPRA of counsel fees to appointed counsel, and (3) dismissing the action without prejudice.

■ Conceivably, appointed counsel and the named plaintiffs in a test case could, between themselves, reach an agreement on fees under which the action goes forward as a fully adversary proceeding and not as a permissible collusive suit. Here, however, the Fagans were selected by CPRA as plaintiffs because they were the next-door neighbors of the president of CPRA, and there is no suggestion that they desire to continue the litigation at their personal expense. Nor is there any indication that appointed counsel is prepared to continue the litigation on behalf of the Fagans, as real parties in interest, without fee. The only party who was at one time willing to finance the litigation was CPRA, and it now wants this case ended.

The case is moot, and on that ground we affirm the judgment of the trial court.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY COLUMBIA PARK AND RECREATION ASSOCIATION, INC.